IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| GLORIA WASHINGTON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HOVENSA, LLC, et al. | : | NO. 06-97 |

MEMORANDUM

Bartle, J.                                          November 10, 2011

Plaintiff Gloria Washington ("Washington") brings this action against defendants HOVENSA, LLC ("HOVENSA") and Triangle Construction and Maintenance, Inc. ("Triangle") in which she seeks damages for personal injuries allegedly suffered as a result of sandblasting occurring on HOVENSA's property in St. Croix. Before the court is the motion of HOVENSA for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

I.

We may grant a motion for summary judgment only "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (internal quotation marks omitted); see also Fed. R. Civ. P. 56(c)(2). We view the facts and draw all inferences in favor of the non-moving party. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). When ruling on a motion for summary judgment, we may only rely on admissible

evidence.  See, e.g., Blackburn v. United Parcel Serv., Inc., 179
F.3d 81, 95 (3d Cir. 1999).

II.

The following facts are taken in the light most
favorable to Washington as the non-moving party.  In 2001,
HOVENSA and Triangle entered into a contract under which Triangle
would supply industrial maintenance services at the HOVENSA
refinery in St. Croix, including "labor, materials, supervision
and management."  The contract called for HOVENSA to provide job
site security, provide equipment, and procure necessary permits,
licenses, and easements.

On April 5, 2006, employees of Triangle were
sandblasting a fire hydrant at the HOVENSA refinery pursuant to a
HOVENSA work permit.  At that time, Washington was driving down a
road at the refinery on her way to perform her duties as a
quality control and quality assurance inspector.  She was an
employee of Sabine Storage and Operations, which had a contract
with HOVENSA for such work.  As she approached the area of the
sandblasting, Washington started to raise her windows.  She was
driving slowly, possibly under ten miles-per-hour.  The discharge
line from the sandblaster's blast pot clogged.  When a Triangle
employee attempted to clear the line, some of the sandblasting
material struck Washington's car.  She heard a loud noise, and
the car windows on the left side of the car shattered.  She then
pulled the car over to the left side of the road and stopped the
car.  Triangle safety employees were not in the area at the time

-2-

of the incident but were called to the scene soon afterwards.  As a result of the incident, Washington purportedly has hearing loss and other ear problems as well as left shoulder and neck pain.

Triangle had been sandblasting fire hydrants for two weeks before the incident.  It used plywood to create a barricade to separate the jobsite where the sandblasting was being performed from the roadway where Washington was injured. Triangle employees discussed the barricade with HOVENSA safety employees before starting sandblasting, and HOVENSA safety employees agreed to the use of the plywood.  In a report regarding the incident, a Triangle employee wrote that the plywood barricade was "woefully inadequate."

HOVENSA employees requested Triangle to undertake the sandblasting job and then issued a work permit to Triangle authorizing it to do so.  HOVENSA'S procedures for issuance of work permits required HOVENSA to inspect the work area prior to commencement of the work to ensure proper precautions and preparations had taken place.  According to these procedures, the HOVENSA employee who issued the work permit had the "primary responsibility" for safety at the site including making sure the persons receiving the permit understood any unusual conditions or potential hazards connected with the job.  The procedures also required the HOVENSA employee who issued the permit to be aware of all aspects of the work to be performed and any changes to the conditions which existed at the time of the permit issuance. Each work permit was valid for up to twelve hours or until the

-3-

person who issued the permit was relieved by another HOVENSA employee qualified to issue work permits.

HOVENSA had a manual on safety procedures that included specific sections on contractor safety and provided that anyone operating equipment be properly trained by HOVENSA. HOVENSA conducted "safety days" to discuss safety issues with its independent contractors, including Triangle. Triangle met with HOVENSA once a week to discuss safety, and Triangle supervisors met with HOVENSA daily to coordinate work assignments. HOVENSA performed safety audits including field audits approximately every six weeks to inspect job sites, make sure preparation for each job was proper, and ensure that employees wore proper safety equipment. HOVENSA made sure Triangle employees wore earplugs, safety glasses, and hard hats.

Triangle and its employees were obligated to follow HOVENSA's plant rules and regulations while performing services for HOVENSA. This obligation covered specific guidelines regarding portable abrasive blasting, including sandblasting procedures. HOVENSA owned and maintained the sandblasting equipment, and it was Triangle's responsibility to inspect it before use for safety purposes. HOVENSA safety employees regularly drove up and down the road by the sandblasting and had a security camera set up 150 to 200 feet from where the sandblasting was taking place.

-4-

                              III.

        We first consider HOVENSA's contention that liability
is precluded under § 414 of the Restatement (Second) of Torts
because Washington cannot show any material facts to prove
HOVENSA retained control of the work performed by Triangle.  The
Virgin Islands has adopted the Restatement (Second) of Torts as
the law of the Territory.  1 V.I.C. § 4; see also Chase v. Virgin
Islands Port. Auth., 3 F. Supp. 2d 641, 643 (D.V.I 1998).
Section 414 provides:

            One who entrusts work to an independent
            contractor, but who retains the control of
            any part of the work, is subject to liability
            for physical harm to others for whose safety
            the employer owes a duty to exercise
            reasonable care, which is caused by his
            failure to exercise his control with
            reasonable care.

        Under this section, a general right to order work
stopped or to inspect its progress is insufficient to impose
liability.  Hood v. Hess Oil Virgin Islands Corp., 650 F. Supp.
678, 681 (D.V.I. 1986).  HOVENSA maintains that it did not retain
control to the extent necessary to establish liability under
§ 414 because it merely had a general right of inspection and
since its employees had no authority to direct the work of
qualified independent contractor employees.

        Washington has come forward with evidence not only that
HOVENSA employees requested the fire hydrants to be sandblasted
near the road where Washington was driving but also, as noted
above, that HOVENSA agreed to the use of an inadequate barricade

                              -5-

created by Triangle to provide safety, issued a work permit for
the sandblasting, regularly met with Triangle employees regarding
safety, conducted periodic "safety days" for Triangle employees,
performed regular safety audits of Triangle job sites, ensured
that Triangle employees were wearing proper safety equipment, had
specific safety guidelines on sandblasting, and owned and
maintained the sandblasting equipment.  This is significantly
more evidence of control over an independent contractor than that
introduced in Hood.  There, the only evidence of control was that
the defendant had a right to forbid the independent contractor
from doing work in a dangerous manner.  Id.  Accordingly,
Washington has raised genuine issues of material fact regarding
whether HOVENSA retained control over any part of Triangle's
work.  We will deny HOVENSA'S motion for summary judgment under
§ 414 of the Restatement (Second) of Torts.

                              IV.

          We next turn to HOVENSA's argument that it is not
liable as a landowner under the Restatement (Second) of Torts
§ 343 because it lacked actual and constructive knowledge of the
alleged danger of the sandblasting.  That section provides:

>           A possessor of land is subject to liability
>           for physical harm caused to his invitees by a
>           condition on the land if, but only if, he
>           (a) knows or by the exercise of reasonable
>           care would discover the condition, and should
>           realize that it involves an unreasonable risk
>           of harm to such invitees, and
>           (b) should expect that they will not discover
>           or realize the danger, or will fail to
>           protect themselves against it, and

> (c) fails to exercise reasonable care to
> protect them against the danger.

HOVENSA claims it had no knowledge of any danger associated with the sandblasting because the sandblasting job started two weeks before Washington's accident and there were no other reported incidents of injury during that time.  This argument fails.  The fact that no other incidents occurred does not negate the dangerousness of the activity.  Furthermore, Washington has introduced evidence that HOVENSA employees drove regularly down the road next to the sandblasting, that there were security cameras 150 to 200 feet of the sandblasting, and that the barricade between the sandblasting and the road was inadequate.  Significantly, HOVENSA was told about the plywood barricade and agreed to its use.  Viewing this evidence together, the fact finder can draw a reasonable inference that HOVENSA must have or should have known about the inadequate barricade and the dangerousness of the sandblasting on its land.

Accordingly, we will deny the motion of HOVENSA for summary judgment under § 343 of the Restatement (Second) of Torts.

V.

Even if it is not entitled to summary judgment under §§ 414 and 343 of the Restatement, HOVENSA argues that Washington's non-economic damages are limited to $75,000 pursuant to 20 V.I.C. § 555.  Under that statute as it stood at the time of the filing of this lawsuit, "[t]he total amount recoverable

for non-economic damages for any injury to a person in an action arising out of a motor vehicle accident may not exceed $75,000."

HOVENSA argues that Washington's injuries arose out of a motor vehicle accident and that any non-economic damages are subject to the statutory limitations.  In deciding this issue, we are guided by the rules of statutory construction of the Virgin Islands, under which "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language."  1 V.I.C. § 42.

Based on the record before us, we cannot conclude as a matter of law that Washington's injuries arose out of a motor vehicle accident, even though she happened to be driving her car when the incident occurred.  HOVENSA has not pointed to any undisputed evidence that her claimed damages were proximately caused by the operation or functioning of a motor vehicle.  See RESTATEMENT (SECOND) OF TORTS § 430.  This is not a case of two cars crashing, or of one car hitting a stationary object and personal injuries resulting.  Here, Washington would have been injured whether or not she was in a car.  If she had been walking down the road, she still would have been hit by the sandblasting materials.  If she had been sitting in her car eating lunch, and a person had blasted her with water from a high pressure hose or had walked up, broken the window, and punched her, it could not be said that her injuries arose out of a motor vehicle accident. The vehicle in these scenarios is essentially irrelevant to her injuries.  The circumstances here are similar.

-8-

Accordingly, the incident alleged here cannot be said as a matter of law to arise out of a motor vehicle accident in the sense of the "common and approved usage of the English language."  1 V.I.C. § 42.  We will therefore deny HOVENSA's motion for summary judgment to the extent it seeks to limit Washington's non-economic damages under 20 V.I.C. § 555.